## WALL v. McMURRAY, et al.
### No. X-118381.

Industrial Commission.

January 20, 1958.

Chesley V. Morton, Fort Lauderdale, for claimant.

Miller, Hewitt, Cone & Wagner, West Palm Beach, for the employer and insurance carrier.

JAMES F. MINNET, Deputy Commissioner.

Hearings were conducted at Fort Lauderdale on November 14 and December 19, 1957. On August 4, 1957 the claimant was injured in an accident arising out of and in the course of his employment with the employer, E. H. Dotson, a "sub-sub-contractor under the owner-builder, George J. Collier, Inc.," when his lathing hatchet slipped or fell, cutting his left index finger.

A fellow worker took him to a hospital for treatment. He was hospitalized at Holy Cross Hospital for four days after which he was treated by Dr. Charles Zinn. He estimates 24 miles of travel between his home and Dr. Zinn's office, and that he made 10 or 12 visits.

He worked in a dual capacity, 5 days a week as a carpenter for George J. Collier, and on Saturday and Sunday he worked as a lather for E. H. Dotson, a subcontractor under James McMurray, a subcontractor under Collier. It was McMurray who contracted with Collier to supply all the necessary plastering work, which of course contemplated lathing. Dotson, who employed claimant on week ends, did not have workmen's compensation insurance. He paid workers under an arrangement whereby the worker is paid so much per bundle of lathe applied.

As a carpenter for Collier, claimant's average weekly wage was $115; with Dotson, as a lather, his average weekly wage was $40.

He was injured across the dorsum of the left hand at the second metacarpal joint. Dr. Zinn is the treating physician. He finds abnormal tendon thickening and would rate the hand 15%. In addition he has lost certain use of the index finger, particularly for holding nails with use of this finger and thumb. He also finds it impossible to make a good fist and to close his hand completely. He has learned to use the second finger for nailing and feels he can perform as well as before. Dr. Zinn rates the loss of use of this finger from 30% to 40%.

McMurray and his carrier take the position that claimant was not an employee, but an independent contractor. They controvert further by asserting that Collier, owner-builder, should be found liable. On behalf of Collier it is urged that the commission should go up the ladder of the contractual relationship and thus find McMurray responsible.

In reviewing the ladder of contractual relationship we first find Collier, the general contractor, as owner-builder, on the top rung; under we find McMurray, the plastering contractor; under Mc-

Murray we find Dotson, the lathing contractor; and under Dotson we find the claimant.

As stated, Dotson had no coverage and therefore we continue up the ladder of responsibility. Upon reaching McMurray we find him taking the position that claimant is an independent contractor. The facts do not support that conclusion. The very nature of the job and duties would require a strained construction to hold in these circumstances that he was not in fact an employee.

It must be observed that this injury arose out of a situation where building was involved, which leads to the provisions of the statute in section 440.10(1) which has an effect on contractual relationships in the building trades. It will be noted that the legislature has insured that every worker so engaged is covered. Thus to escape the responsibility under these provisions of the Act there must be strong and convincing evidence that a person was in fact an independent contractor.

Claimant was an ordinary employee performing ordinary duties, the fact that he used his own tools, a hatchet to drive in nails, and operated his own car to and from the job, plus an arrangement of pay predicated on piece work, does not place him in the category of an independent contractor. As has been said many times, the test lies in the control. Here there appears to be little doubt that the control was in Dotson regardless of the freedom that was allowed the claimant because of the "per bundle" week end arrangement.

Continuing to the second question, as to whether or not claimant was an employee, at the time of the accident, of George J. Collier, the general contractor owner-builder, there is no doubt that he was in Collier's employ five days of the week. This close inter-relationship might tend to the conclusion that he was in fact a joint employee. For example, on Wednesday he would be working as a carpenter on the same house on which he worked on Saturday and Sunday as a lather.

In arriving at the average weekly wage we find it necessary to refer to the work in the same and similar business in order for claimant to obtain a maximum benefit of $35 per week. Claimant made $40 per week as an employee of Dotson. This would entitle him to $24 per week compensation. That he is entitled to this compensation, and that McMurray and his carrier are responsible, is clear. It is also clear that that carrier is responsible for the medical expenses.

What is difficult is whether or not claimant should be entitled to the greater benefits because he was working in a similar capacity for Collier, and whether Collier's carrier should be responsible for

that difference. I do not think so. I find that the owner-builder-general contractor is not liable or responsible in this particular case even though we find that on five days of the week, he, the employee, was so employed. Moreover, different categories of work would impose or place employees under different conditions of greater or lesser hazard. The fact that the employee was ambitious and elected to work seven days a week should not place upon the general contractor, who employs him five days per week, this added obligation over which he had no control. Many reasons exist for this and it is sufficient to say that on the sixth or seventh day the worker may not be so efficient and therefore not so alert, plus the fact that he will work under different conditions.

I therefore find—(1) that claimant's average weekly wage was $40, making his rate of compensation $24 per week, (2) that as a result of his injury he suffered temporary total disability from August 4 to September 9, 1957, inclusive, (3) that as a result of the injury he suffered permanent partial disability of 15% loss of use of his left hand, and (4) that he was represented by Chesley V. Morton and that $500 is a reasonable fee for legal services.

It is therefore ordered that the employer, James McMurray, through his carrier, Maryland Casualty Co.—(1) pay forthwith to claimant $109.72 for temporary total disability from August 3 to September 9, 1957, inclusive, at the rate of $24 per week, (2) pay all outstanding medical bills incurred in the treatment of claimant's injury and reimburse him for any expenditures made by him in this respect, (3) pay claimant $18 to cover cost of traveling to and from Dr. Zinn's office, (4) pay claimant compensation for 26¼ weeks at the rate of $24 per week, commencing September 10, 1957, representing compensation for permanent partial disability of 15% loss of use of the left hand, (5) pay claimant's attorney $500, and (6) pay the costs of this proceeding.